UNITED STATES DISTRICT COURT
DISTRICT OF THE DISTRICT OF COLUMBIA

RUDY FLORES
3415 Aberdeen Street
Suitland, MD  20746

        Plaintiffs,

   v.

NOAH DUCKETT
Metropolitan Police Department Officer
108 Blakely Road
Kearneysville, WV  25430-1112

and

BYRON ALARCON
Metropolitan Police Department Officer
4990 Walking Stick Road, Apt K
Ellicott City, MD  21043-8052

        Defendants.

Civil Action No:  22-22

## COMPLAINT

Rudy Flores, by counsel Washington Lawyers Committee for Civil Rights and Urban Affairs and Crowell & Moring LLP, for his Complaint against Defendants pursuant to 42 U.S.C. § 1983 alleges as follows:

## NATURE OF THE ACTION

1. This action seeks to remedy the unlawful stop and search of Mr. Flores, a Latino who was lawfully spending time with friends and acquaintances in the Columbia Heights neighborhood of the District Columbia ("D.C." or the "District").  Mr. Flores was talking with friends in a public alley in Columbia Heights when officers with the Metropolitan Police Department ("MPD") forced the group to disperse.  Despite having no reason to suspect Mr. Flores

1

was engaged in criminal activity, Defendant Officers stopped and detained Mr. Flores, harassed him with homophobic language, threatened, and searched him. During the search, the officers conducted a pat-down search and found nothing. Regardless, later they conducted a second unnecessary search of the inside of Mr. Flores' pants pockets—all while Mr. Flores was handcuffed. Defendant Officers found no evidence of any crime and released Mr. Flores without arrest, but not without continuing their threats as Mr. Flores walked away. This incident was humiliating and violated Mr. Flores's constitutional rights.

## PARTIES

2. Plaintiff Rudy Flores is Latino and a resident of Suitland, Maryland.

3. At all times relevant to this Complaint, Officer Noah Duckett was employed by the District of Columbia Metropolitan Police Department, Fourth District, and acting under color of law.

4. At all times relevant to this Complaint, Officer Byron Alarcon was employed by the District of Columbia Metropolitan Police Department and acting under color of law.

## JURISDICTION AND VENUE

5. The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the United States Constitution and federal statutes.

6. Venue is proper in this federal district court because the events that give rise to this action occurred in the District of Columbia.

7. The Court has personal jurisdiction over Defendants because they were employed by the District of Columbia during all times relevant to this Complaint and engaged in the relevant conduct in the District of Columbia.

**FACTUAL ALLEGATIONS**

8. Mr. Flores is a regular visitor of the District and the Columbia Heights neighborhood. Not only does he have childhood friends in the area, but Mr. Flores' grandmother lives in the area. Throughout 2019, Mr. Flores visited Columbia Heights regularly to visit his grandmother and spend time with friends.

9. On the evening of May 8, 2019, Mr. Flores was spending time with a friend in Columbia Heights when they were joined by a group of acquaintances exiting the back of an apartment building into the public alleyway. Shortly after the group joined, MPD officers drove down the alley toward the group and signaled to the group to disperse.

10. The officers had no legal reason to request that Mr. Flores and the other individuals leave the area, but they all complied. The police vehicle followed the group out of the alley.

11. Afraid of being stopped by the police with no bystanders present, Mr. Flores headed toward the local Giant grocery store in Columbia Heights where he knew more people would be present. On the way, Mr. Flores noticed a police cruiser following him and began to record the encounter using his cell phone.

12. Defendant Alarcon exited the police cruiser that was following Mr. Flores and continued following Mr. Flores down the sidewalk on foot. Meanwhile, Defendant Duckett drove the police cruiser slowly alongside Mr. Flores as he was walking on the sidewalk, harassing Mr. Flores with homophobic taunts such as "What's up buddy? Don't try to run in those tight ass pants," and asking whether "[Mr. Flores was] in the alley with his boyfriend." Mr. Flores understood Defendant Duckett's language as insinuating Mr. Flores was gay and intended by Defendant Duckett to be derogatory and harassing.

13. In addition to homophobic insults, Defendants repeatedly aimed verbal threats at Mr. Flores in response to his attempts to collect the Defendant's names and badge numbers.

14. Mr. Flores, feeling concerned for his safety and insulted, asked Defendant Duckett if the officers were following him. Defendant Duckett, who continued to slowly stalk Mr. Flores in his police vehicle while Defendant Alarcon stalked Mr. Flores on foot, admitted that they were in fact following him.

15. Then, just as Mr. Flores entered an unlit area of the sidewalk, Defendant Duckett abruptly pulled over his police vehicle. Defendant Duckett exited his vehicle and quickly confronted Mr. Flores, blocking his path from the front. Defendant Alarcon quickly moved toward Mr. Flores at the same time, blocking the other side of the sidewalk and preventing Mr. Flores from walking in the other direction.

16. Afraid that Defendant Duckett was about to assault him, Mr. Flores yelled and pleaded for help. Defendant Duckett grabbed Mr. Flores, pinning him face first against a metal fence and handcuffing both his hands behind his back. Defendant Duckett's shove forced Mr. Flores to drop the phone he was using to record the event. Defendant Alarcon was standing near Defendant Duckett and Mr. Flores, observing the entire encounter.

17. Defendant Duckett subsequently admitted that neither he nor Defendant Alarcon had any basis to believe Mr. Flores had engaged in or was about to engage in criminal activity. Rather, Defendant Duckett stated Mr. Flores was stopped simply because he was in the vicinity of other individuals they thought to be gang members.

18. Despite Mr. Flores not resisting Defendant Duckett's aggressive actions, Defendant Duckett yelled at Mr. Flores, "You keep acting this way, you going to get detained right now."

19. Defendant Duckett then began interrogating Mr. Flores about the other people in the alley, all while patting down his clothing from shoulder to ankles. Defendant Duckett did not find any weapons or contraband.

20. Defendant Duckett then asked whether Mr. Flores had identification on him. When Mr. Flores said his I.D. was in his pocket, Defendant Duckett shoved his hands into Mr. Flores' pockets and rustled through them, before pulling out Mr. Flores' wallet and removing his I.D. Defendant Alarcon witnessed Defendant Duckett's pat down and subsequent search of Mr. Flores' pockets and at no time spoke up nor physically intervened to prevent the unlawful search. Defendant Duckett's statements that he was looking for Mr. Flores' I.D. clearly indicated that Defendant Duckett was not searching Mr. Flores' pockets based on an indication that a weapon was on Mr. Flores' person.

21. Mr. Flores did not give Defendant Duckett consent to reach into his pocket or retrieve his I.D. Further, Mr. Flores was not obligated to provide his identification to the Defendants. District of Columbia law only requires individuals to provide their name and address to police for inclusion in a citation; individuals are not required to show police officer physical identification. D.C. Code 50-2303.07; *see also* MPD's General Order 304.10.

22. Defendant Alarcon was standing close enough to Defendant Duckett and Mr. Flores to hear that Defendant Duckett did not request consent to search Mr. Flores' pockets. In fact, Defendant Alarcon could have at any point spoken up and requested consent on behalf of Defendant Duckett, but he did not.

23. Despite lacking reasonable suspicion that Mr. Flores committed a crime or that he was armed and dangerous, Defendant Alarcon retrieved Mr. Flores' wallet from Defendant Duckett to run an information request for outstanding warrants on Mr. Flores.

24. Defendant Duckett kept Mr. Flores pressed against the fence and checked Mr. Flores' body for tattoo markings. Defendant Duckett used his flashlight to run his light over Mr. Flores' arms, using his hands to forcefully twist Mr. Flores' forearm to better see the markings.

25. After an initial review of Mr. Flores' tattoos, Defendant Duckett took Mr. Flores, still handcuffed, to his squad car and kept him standing next to the vehicle. At his vehicle, Defendant Duckett continued inspecting Mr. Flores' tattoos under his flashlight.

26. After being detained and handcuffed for nearly ten minutes, having his body and pockets searched, Defendant Duckett finally released Mr. Flores.

27. As of the filing of this complaint, Mr. Flores has not been charged with any crimes associated with the events of May 8, 2019.

28. As a result of Defendants' unlawful actions, Mr. Flores filed a complaint against the Defendants with the Office of Police Complaints ("OPC"). During the investigation of Mr. Flores' complaint against the MPD officers, OPC interviewed Defendant Duckett. During his interview, Defendant Duckett attempted to justify seizing Mr. Flores on May 8, 2019, by claiming Mr. Flores was hanging out with known gang members in the alley that night. Defendant Duckett did not provide any explanation as to how he knew individuals in the alley were "gang members."

29. Defendants were aware or should have been aware that their conduct was unlawful because it violated fundamental constitutional principles and was in violation of MPD's General Order 304.10, which prohibits an officer during a "frisk" from reaching "inside the individual's clothing or pockets during a pat down, unless the [officer] feels something that may reasonably constitute a weapon or dangerous instrument." MPD General Order 304.10 at II.C.4.c.3; *see also id*. at III.C.4.b.

30. As a result of the seizure and search at the hands of MPD officers, Mr. Flores suffered humiliation, deprivation of his liberty, and fear for his personal safety.

## COUNT ONE: VIOLATION OF THE FOURTH AMENDMENT – UNREASONABLE SEIZURE

### Against Defendants Duckett and Alarcon

31. Mr. Flores repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

32. Defendants Duckett and Alarcon were, at all times relevant to the actions alleged herein, state actors and persons acting under color of state law within the meaning of 42 U.S.C. § 1983 because they were employed by the D.C. government to exercise police powers.

33. When Defendants Duckett and Alarcon stopped Mr. Flores on May 8, 2019, and restricted Mr. Flores' movement, Mr. Flores was seized under color of law.

34. Defendants Duckett and Alarcon followed Mr. Flores and surrounded him in a dark section of sidewalk to prevent him from walking away. Then Defendant Duckett handcuffed Mr. Flores, making it impossible for him to freely leave the encounter. Further, Defendant Duckett directly told Mr. Flores he was being detained while handcuffed.

35. At no time did Defendants Duckett and Alarcon have a warrant or probable cause to arrest or detain Mr. Flores, nor did they have a reasonable belief that Mr. Flores was a danger to himself or others.

36. Additionally, Defendants Duckett and Alarcon did not have reasonable suspicion to support a seizure of Mr. Flores for purposes of further investigation. Here, the basis alleged for stopping Mr. Flores was that he was in the vicinity of other individuals they thought to be gang members. The D.C. Circuit has repeatedly held, however, that guilt by association is insufficient to justify a *Terry* stop. *Bennett v. United States*, 26 A.3d 745, 748 (D.C. 2011);

*States*, 758 A.2d 944, 945–47 (D.C. 2000) (finding no reasonable articulable suspicion to stop defendant when he was standing beside car and talking to its occupants while person standing on other side of car was smoking marijuana); *Smith v. United States*, 558 A.2d 312, 315 (D.C. 1989) (en banc) (finding defendant's conversation with suspected drug dealer insufficient to support stop).

37. Defendants' actions constituted callous indifference to and reckless disregard of Mr. Flores' rights under the Fourth Amendment.

38. As a direct and proximate result of Defendants' actions in seizing him, Mr. Flores suffered humiliation, deprivation of his liberty, and was otherwise damaged and injured.

### COUNT TWO: VIOLATION OF THE FOURTH AMENDMENT – UNREASONABLE SEARCH

**Against Defendant Duckett**

39. Mr. Flores repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

40. As stated *supra*, Defendant Duckett had no reasonable suspicion to stop Mr. Flores and therefore no basis for conducting any search at all.  Further, even if Defendant Duckett had some basis for conducting a brief search for officer safety, he far exceeded the bounds of such a search when he physically entered Mr. Flores' pockets to search for identification.  Mr. Flores did not provide consent for this search, nor did Defendant Duckett have reasonable suspicion that Mr. Flores was armed or dangerous—having failed to detect anything during his frisk that could have clearly felt like a weapon or contraband.  *See Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993) (finding that an officer may seize contraband identified during a lawful pat down of a suspect's outer clothing).

41. Defendant Duckett's search of Mr. Flores' person was conducted with wanton and reckless disregard for Mr. Flores' Fourth Amendment rights.

42. As a direct and proximate result of Defendant Duckett's actions in searching him, Mr. Flores suffered humiliation, deprivation of his liberty, and was otherwise damaged and injured.

### COUNT THREE: FAILURE TO INTERVENE REGARDING VIOLATION OF FOURTH AMENDMENT – UNREASONABLE SEARCH

#### Against Defendant Alarcon

43. Mr. Flores repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

44. Defendant Alarcon was, at all times relevant to the actions alleged herein, a state actor and person acting under color of state law within the meaning of 42 U.S.C. § 1983 because he was employed by the D.C. government to exercise police powers.

45. Defendant Alarcon knew that his fellow officer, Defendant Duckett, was violating Mr. Flores' Fourth Amendment Rights when he reached in and rustled through Mr. Flores' pockets.

46. As stated *supra*, Defendants had no reasonable suspicion to stop Mr. Flores and therefore no basis for conducting any search at all. Further, even if Defendant Duckett had some basis for conducting a brief pat down for officer safety, Officer Duckett's actions far exceeded the bounds of such a search when they physically entered Mr. Flores' pockets to search for identification.

47. Mr. Flores did not provide consent for this search, nor did Defendant Duckett have reasonable suspicion that Mr. Flores was armed or dangerous. Defendant Duckett did not detect anything during his frisk that could have clearly felt like a weapon or contraband.

48. Defendant Alarcon knew that Defendant Duckett had not requested or received consent to search Mr. Flores' pockets because Defendant Alarcon was standing next to Defendant Duckett during the search and could hear the entire interaction.

49. Defendant Alarcon could also hear Defendant Duckett's statements that he was looking for Mr. Flores' I.D.

50. As an officer with the Metropolitan Police Department, Defendant Alarcon was trained in when and how searches may be conducted by an officer.

51. Defendant Alarcon had ample and reasonable opportunity to prevent the deprivation of Mr. Flores' Fourth Amendment Rights because he observed Defendant Duckett pin Mr. Flores against the fence, conduct a pat down, and search through Mr. Flores' pockets.

52. Defendant Alarcon purposefully chose not to intervene in protection of Mr. Flores' well established Fourth Amendment Rights and allowed his fellow officer, Defendant Duckett, to trample upon Mr. Flores' constitutional freedoms.

53. As a direct and proximate result of Defendant Alarcon's failure to intervene upon Defendant Duckett's unreasonable search of him, Mr. Flores suffered humiliation, deprivation of his liberty, and was otherwise damaged and injured.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Flores respectfully requests that this Court:

A. Award him compensatory damages for the pain and suffering caused by Defendants' actions;

B. Award him punitive damages arising from the nature of the Defendants actions;

C. Award him the costs and reasonable attorneys' fees incurred in connection with this action;

D. Grant such relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated: January 5, 2022

Respectfully Submitted,

/s/ *Jacqueline Kutnik-Bauder*
Jacqueline Kutnik-Bauder*
Dennis A. Corkery (DC Bar No. 1016991)
Carlos A. Andino*
WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS AND
URBAN AFFAIRS
700 14th St., NW
Ste. 400
Washington, DC 20005
(202) 319-1000
jacqueline_kutnik-bauder@washlaw.org
dennis_corkery@washlaw.org
carlos_andino@washlaw.org

Preston Pugh (DC Bar No. 229512)
Diane Shrewsbury (DC Bar No. 1021918)
Sarah E. Bartle (DC Bar No. 1029723)
CROWELL & MORING LLP
1001 Pennsylvania Ave NW
Washington, DC 20001
(202) 624-2500
ppugh@crowell.com
dshrewsbury@crowell.com
sbartle@crowell.com

*Motion to appear pro hac vice forthcoming*